United States District Court
Southern District of Texas
**ENTERED**
March 02, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JIMMY A.,
    *Plaintiff*,

v.

FRANK BISIGNANO,[1]
COMMISSIONER OF
SOCIAL SECURITY ADMINISTRATION,
    *Defendant*.

§
§
§
§
§
§
§
§
§
§
§

CIVIL ACTION NO. 4:25-cv-01057

## MEMORANDUM AND RECOMMENDATION

Before the Court is Plaintiff's Motion for Summary Judgment (ECF 18) and Defendant's Cross Motion for Summary Judgment.[2] ECF 19. After considering the parties' arguments, the record, and the applicable law, the Court RECCOMENDS Plaintiff's Motion be DENIED, Defendant's Motion be GRANTED, and the Commissioner's decision be AFFIRMED.

## I.    Factual and Procedural Background.

On October 8, 2021, Plaintiff Jimmy A. filed a Title II application for disability insurance benefits and a Title XVI application for supplemental security income. Tr. 15. The applications identified an alleged disability onset date of June

---

[1] Pursuant to Rule 25(d), Commissioner Frank Bisignano is automatically substituted for his predecessor, Martin O'Malley.

[2] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 11.

30, 2017.  *Id.*  Plaintiff's claims were denied on March 4, 2022, and again upon reconsideration on August 23, 2023.  *Id.*  On February 26, 2024, the Administrative Law Judge ("ALJ") held a hearing at which Plaintiff was represented by counsel.[3] *Id.*  On May 20, 2024, the ALJ issued a written decision finding Plaintiff not disabled.  Tr. 15-27.  The Appeals Council denied Plaintiff's request for review on January 6, 2025.  Tr. 1–7.  Plaintiff sought judicial review in this Court.

On September 3, 2025, Plaintiff filed his Corrected Motion for Summary Judgment.  ECF 18.  On October 1, 2025, Defendant filed a Cross-Motion for Summary Judgment (ECF 19), to which Plaintiff responded (ECF 20). The motions are ripe for consideration.

### A. Plaintiff's Testimony.

The ALJ summarized Plaintiff's testimony from the February 26, 2024, hearing as follows: "At the hearing, the claimant testified that he experiences worsening left leg and knee pain due to the disparity in leg length. This was caused by a remote injury where he was hit by a car. He said he experiences back pain 30 percent of the time and always has left hip pain. He has left knee pain when standing and walking. He described having two herniated discs in his back and referenced spinal imaging from 2019. He estimated he cannot stand or walk for longer than 30

---

[3] ALJ Donald Willy conducted the hearing, but the case was reassigned and the decision issued by ALJ Caroline Beers based on the record ALJ Willy developed. Tr. 16.

to 45 minutes without pain. The claimant denied the prescription of any narcotic medication and explained that he takes Aleve and Medrol. He does not have health insurance and sees Dr. McCray (she is a PA) on a county grant." Tr. 22.

The ALJ continued: "Next, the claimant described intermittent dizziness when standing from a seated position and when bending over. The claimant said this dizziness will cause him to fall if he bends down. The claimant testified that he has fallen 10 times. However, he does not use a cane or walker. He uses furniture to support himself as he goes through his home." *Id.*

The ALJ additionally noted: "The claimant said his pain would not allow him an 8-hour workday. He estimated he could not carry 30 pounds very far and that lifting and carrying weight for a third of the workday would be limited to 15 pounds. His doctor is running tests to better understand his fatigue and low energy. He sits down for all but two or three hours in a day." *Id.*

### B. Medical Evidence.

The medical records span 2017 to 2024 and include medical opinions from state agency medical consultants Drs. Kavitha Reddy and Prianka Gerrish and state agency psychological consultants Drs. Carol Mohney and John G.[4] Tr. 909-914, 917-922. The record includes medical opinions from Dr. Jerisa Berry (who testified

---

[4] In the initial state agency disability determination report, the psychological consultant's name is only given as "John G Phd." Tr. 927.

at the hearing) and consultative examiner Dr. Ronald Kirkwood.  Tr. 896-900, 1330-1333.

The administrative record also contains additional late-filed medical records, including a medical opinion from Dr. Mary Hewitt (M.D.), Plaintiff's treating physician.  Tr. 154-872.  During the February 26, 2024, hearing the ALJ granted Plaintiff's request to hold the record open for 14 days to allow for the submission of additional evidence.  Tr. 15.  Two days later, Plaintiff submitted additional medical evidence that was entered into the record.  Tr. 15-16, 1396-1837.  On April 19, 2024, Plaintiff requested the record continue to be held open pending submission of records from Dr. Hewitt.  Tr. 16.  The ALJ denied this request in her opinion, which was issued before the late-filed records were submitted.  Thus, Dr. Hewitt's records were not considered by the ALJ.

## II.    Standard of Review for the Commissioner's Decision.

Section 405(g) of the Act governs the standard of review in social security disability cases.  *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).  Federal court review of the Commissioner's final decision to deny Social Security benefits is limited to two inquiries: (1) whether the Commissioner applied the proper legal standard; and (2) whether the Commissioner's decision is supported by substantial evidence.  *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).

With respect to all decisions other than conclusions of law,[5] "[i]f the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence has also been defined as "more than a mere scintilla and less than a preponderance." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002) (quoting *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000)). The standard of review for social security disability claims is exceedingly deferential. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). A court will not re-weigh the evidence, and in the event of evidentiary conflict or uncertainty, will not substitute its judgment for the Commissioner's, even if it believes the evidence weighs against the Commissioner's decision. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018) (internal quotation marks and citation omitted). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Id.*

When determining whether a claimant is disabled, the ALJ must follow a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; *Waters*, 276 F.3d at 718.

---

[5] Conclusions of law are reviewed *de novo*. *Western v. Harris*, 633 F.2d 1204, 1206 (5th Cir. 1981).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing 42 U.S.C. § 423(d)(1)(A)). A finding at any point in the five-step sequence that the claimant is disabled, or is not disabled, ends the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

The claimant bears the burden to prove disability at steps one through four, meaning the claimant must prove he is not currently working and is no longer capable of performing his past relevant work. *Newton*, 209 F.3d at 453. If the claimant meets his burden, the burden shifts to the Commissioner at Step Five to show that the "claimant is capable of engaging in some type of alternative work that exists in the national economy." *Id*. Thus, for the Commissioner to find in Step Five that the claimant is not disabled, the record must contain evidence demonstrating that other work exists in significant numbers in the national economy, and that the claimant can do that work given his RFC, age, education, and work experience. *Fraga v. Brown*, 810 F.2d 1296, 1304 (5th Cir. 1998).

### III.    Analysis.

The ALJ performed the standard five-step sequential analysis and concluded that Plaintiff was not disabled within the meaning of the Social Security Act from his alleged onset date (March 28, 2013) through his date last insured (December 31, 2018).  Tr. 18-19.  The Court reviews each step of the ALJ's analysis below.

#### A. Step One.

At Step One, the ALJ decides whether the claimant is currently working or "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571.  If so, the claimant is not disabled.  Here, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since June 30, 2017, the alleged onset date."  Tr. 19. Plaintiff does not allege error at Step One.

#### B. Step Two.

At Step Two, the ALJ determines whether the claimant has a severe impairment.  "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (internal quotations omitted).  "If [a claimant does] not have any impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities," the Social Security Regulations require a finding that

the claimant does "not have a severe impairment and [is], therefore, not disabled." 20 C.F.R. § 404.1520c.

The ALJ found Plaintiff has the severe impairments of "dizziness, short left leg with left hip, back and knee pain, diabetes, and obesity." Tr. 18. Although the ALJ found Plaintiff had a "medically determinable mental impairment of depression," he found it resulted in only a mild limitation and therefore was non-severe. Tr. 19. *See* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild,' we will generally conclude that your impairment(s) is not severe").

Plaintiff fails to allege, and the Court does not find, error at Step Two.[6]

## C. Step Three.

Step Three requires the ALJ to determine whether the claimant's severe impairments meet or medically equal one of the listings in the regulations known as Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); 20 C.F.R. pt. 404, subpt. P, app. 1. "For a claimant to show that her impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). For a claimant to show that an

---

[6] To the extent Plaintiff claims the ALJ failed to develop the record and that additional medical evidence may have revealed other severe impairments, the Court addresses the argument at Step Four.

impairment "medically equals" a listed impairment the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* (emphasis in original).

In this case, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in Appendix 1. Tr. 20.  The ALJ considered listing 9.00(B)(5), sequelae from chronic hyperglycemia.  Because the "condition leads to long-term diabetic complications by disrupting nerve and blood vessel functioning," the ALJ also considered listings 1.00, 2.00, 4.00, 5.00, 6.00, 8.00, 11.00, and 12.00. *Id.*  The ALJ also considered listing 11.02 (epilepsy), listings 1.15 and 1.18 (hip, back and knee pain) but found Plaintiff met none of the listings.  Tr. 21.  Although obesity is not a listed impairment, the ALJ considered it and found Plaintiff's obesity did not medically equal a listing alone or in combination with another impairment. Tr. 21.

Plaintiff does not allege error at Step Three.

### D. Step Four.

Prior to Step Four, the ALJ must determine the claimant's residual functional capacity ("RFC") to decide whether the claimant can still perform past relevant work.  "The RFC is the individual's ability to do physical and mental tasks on a sustained basis despite limitations from her impairments." *Giles v. Astrue*, 433 F. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).  The ALJ must base

the RFC determination on the record as a whole and must consider all of claimant's impairments, including those that are not severe. *Id.*; 20 C.F.R. §§ 404.1520(e) and 404.1545. The ALJ is solely responsible for determining the claimant's RFC. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The ALJ then considers whether the claimant has past relevant work experience, and if so, whether the limitations in the RFC would allow the claimant to perform his past relevant work. 20 § C.F.R. 404.1520(a)(4)(iv). If the claimant can still perform his past relevant work with the restrictions included in the RFC, then the claimant is not disabled. *Id.*

The ALJ found that Plaintiff had the RFC to perform medium work[7] with the additional restriction that he could not work at unprotected heights or perform work requiring balancing. Tr. 22. None of Plaintiff's past work as a material coordinator (light work), material expeditor (medium work), tugboat dispatcher (sedentary), or exterminator (light) requires activities precluded by the RFC. Tr. 25. Therefore, the ALJ found Plaintiff capable of performing his past relevant work and therefore not disabled. *Id.* 20 § C.F.R. 404.1560.

Plaintiff argues the ALJ erred at Step Four by: (1) failing to properly develop the medical record (ECF 18 at 11-14); (2) failing to properly analyze the medical opinions (*Id*. at 8-11); (3) failing to consider relevant evidence (Dr. Hewitt's medical

---

[7] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).

records and opinion) (*Id.* at 16-19); and (4) failing to properly analyze Plaintiff's past relevant work experience. *Id.* at 15-16.

**1. The ALJ did not err by not considering Dr. Hewitt's untimely filed medical evidence and medical opinion.**

Plaintiff argues the ALJ erred by failing to consider the medical records and opinion of Dr. Hewitt submitted after the ALJ's decision was issued. ECF 18 at 12-13. At the February 26, 2024, hearing, Plaintiff's attorney identified additional records that had not been submitted—those from Dr. Hewitt and Houston Methodist Baytown Hospital. Tr. 876. The ALJ granted Plaintiff 14 days to submit additional evidence but warned that after 14 days the record would be closed and a decision would issue. Tr. 877. The ALJ specifically instructed the attorney to request any extension within the 14-day period. Tr. 877-78.

Plaintiff submitted the records from Houston Methodist Baytown Hospital on February 28, 2024, two days after the hearing. Tr. 15-16. However, Plaintiff did not submit records from Dr. Hewitt during the 14-day period. Not until April 19, 2024, did Plaintiff's attorney request that the record remain open pending submission of documents from Dr. Hewitt. Tr. 16, 1188. The ALJ denied the request in the May 20, 2024, decision. Tr. 16. Dr. Hewitt's records were submitted to the Appeals Council after the ALJ issued her decision. Tr. 2.

The Social Security Regulations require claimants to submit all written evidence to the ALJ no later than five business days before the date of the scheduled

11

hearing. 20 C.F.R. § 404.935. The ALJ may decline to accept evidence submitted after five days prior to the scheduling hearing date *unless*: the ALJ has not yet issued a decision *and* the claimant failed to submit the evidence prior to the deadline because of one of the reasons listed in § 404.935(b). [8]

The ALJ did not err by failing to develop the record. The claimant bears the responsibility to submit evidence relating to disability. 20 CFR § 404.1512. Here, the ALJ held the record open and set a deadline for submission of post-hearing evidence. Rather than submitting Dr. Hewitt's records within the deadline or seeking an extension before the expiration of the deadline, approximately a month after the deadline had passed, Plaintiff sent a request for the record to be held open indefinitely. Tr. 1188. At no point did Plaintiff provide any justification for the failure to timely submit the evidence as required by § 404.935(b) or identify a date by which the evidence could be submitted.

---

[8] Section 404.935(b) allows an ALJ to accept late-filed evidence if the ALJ has not yet issued a decision *and* the evidence was not submitted before the deadline because the claimant: was misled by an action of the SSA; had a physical or mental limitation that prevented him from submitting the evidence earlier; or had unusual, unexpected, or unavoidable circumstances beyond the claimant's control (illness, death or illness of a family member, accidental destruction of records, delay caused by third party). 20 C.F.R. § 404.935(b).

Further, the Social Security Administration's Program Operations Manual instructs that, when allowing for the submission of post-hearing evidence, the ALJ should set a deadline for and explain that any evidence submitted after the deadline will not be considered absent a showing of good cause. *See* U.S. Soc. Sec. Admin., Program Operations Manual Sys., HA 01270.020, Claimant Requests Additional Time to Submit Evidence After the Hearing (2017), https://secure.ssa.gov/apps10/poms.nsf/lnx/2501270020. Absent a showing of good cause, the existence of new or untimely filed evidence is insufficient to warrant remand. *See Knight v. Kijakazi*, No. 22-60539, 2023 WL 234769, at *4 (5th Cir. Jan. 18, 2023).

Plaintiff is not entitled to remand based on the ALJ's denial of the untimely request to hold the record open. *See Knight*, 2023 WL 234769, at *4 (finding no error where plaintiff informed ALJ at hearing of outstanding evidence, the ALJ held the record open for 20 days, Plaintiff submitted additional evidence a month later, and ALJ issued a decision the next day, without considering the untimely evidence); *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) (explaining that the ALJ is not required to seek additional medical evidence when sufficient medical opinion allows determination of disability). Notably, Plaintiff does not challenge the Appeals Council's finding that the newly submitted medical records from Hewitt and others do "not show a reasonable probability that [they] would change the outcome of the decision." Tr. 2.

### 2. The ALJ did not err in evaluating the medical opinions of Drs. Berry and Kirkwood.

Under the revised rules for evaluating medical opinions, the ALJ must "explain how [she] considered the supportability and consistency factors for a medical source's medical opinions or prior medical findings in [her] determination or decision." 20 C.F.R. § 404.1520c(b)(2). "Supportability" focuses on how well the medical evidence and supporting explanations given by the medical provider support the provider's opinion. *Kilby v. Kijakazi*, No. 4:20-CV-03035, 2022 WL 1797043, at *3 (S.D. Tex. Mar. 15, 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency," on the other hand, is "an all-encompassing inquiry focused on how well a medical

source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)).

The ALJ did not err by finding Dr. Berry's opinion—that Plaintiff is capable of performing medium work with restrictions on balancing and working at heights—persuasive. Tr. 23-24. Although the ALJ does not use the word "support," the discussion of the opinion addresses how Dr. Berry's findings support her determination of Plaintiff's functional capacity. *See Griffin v. Comm'r of Soc. Sec.*, No. 1:22-CV-85-JMV, 2023 WL 2646302, at *3 (N.D. Miss. Mar. 27, 2023) (explaining the supportability and consistency analysis does not require magic words). The ALJ noted that Dr. Berry found no evidence indicating a need for an assistive device, or any diagnosis related to the allegations of lethargy, dizziness or pain. Tr. 23-24. The ALJ explained that Dr. Berry did not find evidence of medication or other treatment for vertigo, so Plaintiff's dizziness could require a heights restriction but would not otherwise limit the Plaintiff. Tr. 24. The ALJ further noted that Dr. Berry found Plaintiff's A1C levels showed his diabetes was under control, such that no related restrictions were required. *Id.* Finally, the ALJ explained that treatment notes showing a pattern of medication refills for chronic, controlled conditions, supported the idea Plaintiff did not require significant restrictions. Tr. 24, 896-98.

14

The ALJ also addressed the consistency factors when finding Dr. Berry's opinion persuasive, noting her opinion was consistent with the treatment notes, the state agency medical consultants' findings, and the findings of Dr. Kirkwood. Tr. 24. Plaintiff argues the ALJ's persuasiveness finding regarding Dr. Berry's opinion is undermined by the ALJ's finding that the state agency medical consultants' opinions were not persuasive. Yet, the ALJ specifically explained the consultants' finding that Plaintiff had *no severe impairment* was unpersuasive given the later developed record. Tr. 24; *see Tutt v. Berryhill*, No. 4:17-CV-2520, 2018 WL 4006000, at *4 (S.D. Tex. Aug. 22, 2018) (explaining ALJ did not err in finding medical opinions inconsistent where they "were inconsistent with the record as a whole and newer medical evidence showed additional limitations.").

Neither did the ALJ err in finding Dr. Kirkwood's opinion persuasive. Tr. 24. Although the ALJ states that Dr. Kirkwood's opinion is consistent with, rather than supported by, the results of his examination, the ALJ's discussion of the opinion adequately addresses supportability. *Id.* The ALJ explained Dr. Kirkwood's opinion—that Plaintiff retains full function at a medium exertion level—is supported by his physical examination and observation of Plaintiff showing a normal range of motion without a need for assistive devices. Tr. 24, 1332-33. *See also Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (including physical examinations in example of objective medical evidence); 20 C.F.R. § 404.1502(f), (g) (explaining

15

that objective medical evidence includes signs (i.e., anatomical or physiological abnormalities) shown by medically acceptable clinical diagnostic techniques). The ALJ also explained Dr. Kirkwood's opinion is consistent with the medical evidence which lacks any reference to or treatment of incapacitating pain, dizziness, or weakness. Tr. 24.

### 3. The RFC is supported by substantial evidence.

Plaintiff's assertion that the RFC is not supported by substantial evidence rests on the argument that the ALJ erred by not considering the untimely-filed Hewitt evidence. ECF 18 at 16-18. He posits that an RFC based solely on Dr. Berry's opinion, which he alleges was based on incomplete medical records, is defective. ECF 18 at 13, 16-18. Lastly, Plaintiff argues that the RFC does not account for Plaintiff's documented mental impairments. *Id.* at 18.

As described above, the ALJ did not err in not considering the late-filed evidence. The RFC is based on the concurring opinions of both Dr. Berry and Dr. Kirkwood, which the ALJ thoroughly analyzed, including the supportability and consistency factors.

As for Plaintiff's depression, the RFC is based partially on the persuasive medical opinion of Dr. Kirkwood, which addresses this impairment but finds no need for restrictions. Dr. Kirkwood found Plaintiff had depression and as of August 2023 was taking an antidepressant (Cymbalta). Tr. 1331-33. He also noted Plaintiff's

psychosocial system was within normal limits and that he was alert, cooperative, and oriented. Tr. 1332-33. Additionally, he found Plaintiff independently engaged in his activities of daily living. Tr. 1333. Although the ALJ incorrectly stated there was no evidence Plaintiff was on antidepressants after 2022 (Tr. 19), the misstatement is harmless because the ALJ crafted the RFC in light of Dr. Kirkwood's medical opinion that Plaintiff's depression did not restrict his functional capacity.

As for Plaintiff's alleged anxiety, there is no evidence of this impairment in the record. Again, Plaintiff's argument rests on the late filed evidence, including documentation in Dr. Hewitt's treatment notes that Xanax is one of Plaintiff's medications.[9] *See, e.g.*, Tr. 63, 186, 767. However, Dr. Hewitt's medical opinion does not mention depression or anxiety and includes no related restrictions. Tr. 168-171. Another physician, Dr. Advitya Malhotra, noted in 2019 that Plaintiff appeared to be an "anxious person," but found no evidence of depression or anxiety. Tr. 772. Weighing the evidence properly before her at the time, the ALJ did not err by find no impairment from anxiety. The RFC is supported by substantial evidence.

---

[9] Plaintiff frequently conflates or confuses depression and anxiety in his brief. *See, e.g.*, ECF 18 at 11 (claiming Dr. Kirkwood assessed *anxiety*, when he mentions only depression, and ALJ dismissed *anxiety* due to erroneous Cymbalta finding, when ALJ's discussion was on *depression*).

**4. The ALJ committed legal error in analyzing Plaintiff's past relevant work experience, but the error is harmless because of the alternative Step 5 finding.**

At Step Four, the ALJ must also determine whether Plaintiff can perform his past relevant work with the RFC's restrictions. 20 § C.F.R. 404.1520(a)(4)(iv). At the time of the ALJ's decision, the SSA applied SSR 82-62, which requires the following findings of fact where an individual is found to have the RFC to perform a past relevant job: (1) a finding of fact as to the individual's RFC, (2) a finding of fact as to the physical and mental demands of the past job, and (3) a finding of fact that the individual's RFC would permit a return to his or her past job or occupation. SSR 82-62, 1982 WL 31386 (S.S.A. Nov. 30, 1981). Denial of benefits at step four under the SSR 82-62 framework can be based on a finding that a claimant can perform the past work as actually performed or as generally performed in the national economy. *See Patsy L. v. Comm'r, Soc. Sec. Admin.*, No. 3:21-CV-882-C-BK, 2022 WL 4348735, at *4 (N.D. Tex. Aug. 30, 2022), *report and recommendation adopted,* No. 3:21-CV-882-C-BK, 2022 WL 4349546 (N.D. Tex. Sept. 19, 2022).

Plaintiff claims the ALJ erred by failing to make a finding of fact as to the mental demands of his past work experience. ECF 18 at 16. The Court agrees: SSR 82-62 requires a specific finding of fact regarding the mental demands of past work even though Plaintiff's RFC contains no mental limitations and the ALJ found no

18

severe mental impairments. *See Abshire v. Bowen*, 848 F.2d 638, 641 (5th Cir. 1988) (noting in the case of a plaintiff without mental impairments that the regulation requires a discussion of both the physical and mental demands of past work). Here, the ALJ failed to provide a specific finding of fact as to the mental demands of Plaintiff's past work, only noting that the vocational expert testified that a person with Plaintiff's RFC could perform his past work. Tr. 25. The vocational expert did not mention mental demands of any past work in her testimony. Tr. 901-907.

This error does not warrant remand because the ALJ made an alternative finding that there were other jobs in the national economy Plaintiff could perform. Tr. 25-27. *See Tiede v. Dudek*, 770 F. Supp. 3d 965, 968 (W.D. Tex. 2025) ("The Court will affirm if the error was harmless.").

### E. Step Five.

At Step Five, the ALJ determines whether the claimant can perform other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v); *Fraga*, 810 F.2d at 1304. When posing hypothetical questions to a vocational expert to determine whether the claimant can perform work in the national economy, the ALJ must reasonably incorporate all the limitations recognized by the RFC, and the claimant or her representative must be afforded the opportunity to correct any deficiencies in the question. *Boyd v. Apfel*, 239 F.3d 698, 707 (5th Cir. 2001); *Masterson*, 309 F.3d at 273.

Plaintiff was 52 years old as of the date of alleged disability onset, which is considered closely approaching advanced age, and he possessed at least a high school education. Tr. 25. At the time of the decision, the ALJ noted that the Plaintiff was in the advanced age category. *Id.* The ALJ found that through the date last insured, considering Plaintiff's age, education, work experience, and residual functional capacity, he was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. Tr. 25-27. Specifically, the ALJ explained she did not conduct a transferability analysis because according to the Medical-Vocational Guidelines, Plaintiff's age, education, and medium-work RFC, and past work experience required a finding of not disabled. Tr. 25-26; 20 C.F.R. pt. 404, subpt. P, app. 2, r. 203.07, 203.15 (indicating Plaintiff, whether as a person closely approaching retirement age or of advanced age, as a high school graduate or more without direct entry into skilled work, with non-transferable semi-skilled or skilled past work experience, is classified as not disabled according to the grid analysis). The VE testified that Plaintiff could perform work as a patient transporter or a hospital cleaner. Tr. 26.

Plaintiff argues the ALJ erred in finding past relevant work experience at the medium level, and his past work experience at the sedentary and light levels requires a transferability analysis. ECF 18 at 14. Plaintiff claims both that the ALJ erred in

20

finding he had an RFC for medium work and that his past work experience included medium work.

These arguments are unavailing. As explained above, the ALJ did not err in determining Plaintiff's RFC which includes the capability to perform medium work. Next, the ALJ properly relied on the vocational expert's testimony to find some of his past work was at a medium level. *Leggett v. Chater*, 67 F.3d 558, 565 (5th Cir. 1995) (explaining ALJ can rely on testimony from vocational expert to determine exertion level of past relevant work experience as generally performed in national economy).

## IV.   Conclusion and Recommendation.

For the reasons stated above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF 18) be DENIED, Defendant's Cross-Motion for Summary Judgment (ECF 19) be GRANTED, and the Commissioner's Decision be AFFIRMED.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto.*

*Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on March 02, 2026, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge